**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| VONA Case Management LLC,<br><br>Plaintiff,<br><br>v.<br><br>Rachel Johnson, Mary Haskamp, Joslyn Goetz, and MI Case Management, LLC,<br><br>Defendants. | Case No.<br><br>**VERIFIED COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff VONA Case Management, Inc. ("VONA" or the "Company") files this Complaint against Defendants Rachel Johnson, ("Johnson"), Mary Haskamp, ("Haskamp"), Joslyn Goetz ("Goetz") (collectively, the "Individual Defendants"), and MI Case Management, LLC ("MICM") (collectively with the Individual Defendants, "Defendants") and alleges the following:

## NATURE OF THE ACTION

1. This case is about the Individual Defendants' theft of VONA's confidential and trade secret information to launch a competing business, MICM, while still on VONA's payroll.

2. Each of the Individual Defendants were VONA employees, and while still employed at VONA, they hatched a plan to use the Company's confidential and trade secret information to form their own business.

3. The Individual Defendants executed that plan. A forensic investigation has revealed that, over the course of several months, the Individual Defendants founded and subsequently worked for the benefit of MICM, while continuing to draw paychecks from VONA: spending their working hours advancing MICM's interests and then diverting VONA's clients to their new operation. *See* Ex. A.

4. Each of the Individual Defendants resigned from VONA in quick succession. Before departing, Johnson and Haskamp deliberately emailed VONA's trade secrets and confidential information to themselves, or exported that data off of VONA's systems using USB devices, for the benefit of the newly founded MICM.

5. Equipped with VONA's confidential client and payer lists and pricing information, the Individual Defendants—through their newly-formed company, MICM—have continued to unlawfully compete with their former employer, unjustly enriching themselves at VONA's expense.

6. This Action seeks to redress those indisputable wrongs.

7. Specifically, VONA seeks monetary damages resulting from Defendants' misconduct.

8. Further, VONA seeks to preliminarily and permanently enjoin Defendants from using VONA's trade secrets and confidential information. Absent such injunctive relief, VONA faces irreparable injury, including the loss of clients, competitive advantage, confidential information and trade secrets, and goodwill to a degree impossible to determine unless Defendants are enjoined and restrained by order of this Court.

## THE PARTIES

9. Plaintiff VONA is a limited liability company organized under the laws of the State of Alabama with its principal place of business located 29000 Hwy 98, Bldg. A-101, Daphne, Alabama 36526.

10. Defendant Rachel Johnson is an individual domiciled in North Muskegon, Michigan.

11. Defendant Mary Haskamp is an individual domiciled in North Muskegon, Michigan.

12. Defendant Joslyn Goetz is an individual domiciled in Norton Shores, Michigan.

13. Defendant MI Case Management, LLC is a limited liability company organized under the laws of the State of Michigan with its principal place of business located in North Muskegon, Michigan.

## JURISDICTION AND VENUE

14. The Court has personal jurisdiction over Johnson, Haskamp, and Goetz because they are domiciled in Michigan and because the wrongful conduct herein arose from their contacts with Michigan.

15. The Court has personal jurisdiction over MICM because it is a limited liability company organized under the laws of the State of Michigan, has its principal place of business located in the State of Michigan, and—upon information and belief—its members reside in Michigan. In addition, the wrongful conduct herein arose from MICM's contacts with Michigan.

16. The Court has original subject-matter jurisdiction over this action under 28 U.S.C. § 1331, as VONA's Defend Trade Secrets Act ("DTSA") claim arises under federal law, specifically, 18 U.S.C. §§ 1836, *et seq.*

17. The Court has supplemental subject-matter jurisdiction over VONA's remaining claims under 28 U.S.C. § 1367, as the Court has original jurisdiction over VONA's DTSA claim, and the remaining claims arise out of a common nucleus of operative fact as the base claim.

18. In the alternative, the Court also has original jurisdiction over this action under 28 U.S.C. § 1332, as the amount in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between VONA (Delaware/Alabama), on the one hand, and the

Defendants Johnson (Michigan), Haskamp (Michigan), Goetz (Michigan), and MICM (Michigan), on the other hand.

19. Venue is proper in this Court because all Defendants are domiciled and reside in the Western District of Michigan.

## FACTUAL BACKGROUND

### A. VONA's Business & Protection of Its Trade Secrets

20. VONA is medical case management company that provides field, catastrophic, vocational, and telephonic case-management services focused on supporting injured workers through their recovery and return to work.

21. Established in 2015, VONA and its affiliated companies quickly grew into a national organization.

22. That rapid success can be attributed to VONA's substantial investment in cultivating and protecting its trade secret information.

23. Some of those protective measures include:

- Limiting access to trade secrets by triaging access levels based on employees' positions and their need-to-know;
- Password-protecting access to trade secret information;
- Entering into confidentiality agreements with employees;
- Maintaining and subjecting employees to a Code of Conduct and Handbook policies that explicitly prohibit improper use or disclosure of confidential information; and
- Encrypting employees' work laptops and devices.

24. For example, all VONA employees are subject to the policies and procedures outlined in the VONA Employee Handbook (the "Handbook"), which is copied, in part, below:

> Employees shall not disclose any of the aforesaid Confidential Information to third parties, directly or indirectly, or use any of it outside the business of the Employer in any way that would be detrimental to the interests of the Employer, either during the term of his or her employment or at any time thereafter. Specifically, without limitation, no such Confidential Information shall be provided to a competitor, prospective competitor of the Employer, potential future employee, and/or former employees of the Employer. All files, records, documents, specifications, equipment and similar items relating to the business [of] the Employer (including any in electronic or digital form), whether prepared or created by the Employee or otherwise coming into his possession, shall remain the property of the Employer and all originals and copies of such information in any form shall remain the Employer's property and shall be delivered to the Employer immediately upon request. Employee shall not remove any confidential information from the business of the Employer during or after his or her employment by Employer.

(Ex. B, at 10).

25. The Handbook further provides a comprehensive definition of "Confidential Information," which encompasses "trade secrets, proprietary information, confidential documents and information, intensity of customers, internal business and operational information, product specifications, sales methods, pricing data, solicitation lists, client lists, records, personnel files, operational procedures, profit-and-loss statements, company policies and handbooks, and other information and documentation" owned by VONA and regularly used in the operation of its business. (*Id.*).

26. The Handbook also prohibits employees from disclosing "any of the aforesaid Confidential Information to third parties, directly or indirectly, or us[ing] any of it outside the business of the Employer in any way that would be detrimental to the interests of the Employer, either during the term of his or her employment or at any time thereafter." (*Id.*).

27. The Handbook emphasizes that "***no such Confidential Information shall be provided to a competitor, prospective competitor of the Employer, potential future employee, and/or former employees of the Employer***." (*Id.*).

28. VONA also protects its trade secrets through its enterprise case management platform, Advocate Systems ("Advocate"), which houses the Company's pricing and claimant information and combines client management, time tracking, and billing.

29. Advocate is accessible only after entering VONA credentials and a password.

30. VONA limits which employees receive Advocate credentials, and what level of access each employee has, based on the employees' titles, roles, and responsibilities.

31. For example, case managers—like Goetz—had limited access to client lists and information for their own cases.

32. Regional Directors and Office Administrators—like Johnson and Haskamp—had broader access to Company documents related to billing rates and negotiations and claimant referral lists, including extensive access to information on client relationships, case managers supervision and Company administration.

**B. Acquisition of SkyView CCM and Employment of the Individual Defendants**

33. As part of the Company's growth, VONA acquired SkyView CCM, Rehabilitation Consulting LLC ("<u>SkyView</u>") around June 2024. SkyView provided nurse case management, social security disability insurance services (SSDI), vocational case management, and accessibility coordination services throughout Michigan, primarily for individuals with auto and workers' compensation injuries.

34. The SkyView acquisition produced three consequences pertinent to this action:

- It enabled VONA to establish a significant presence in Michigan, where VONA previously had no physical location;

- It gave VONA legal ownership of all the confidential and trade secret information previously owned by SkyView; and
- It resulted in all SkyView employees, including—Haskamp and Johnson—becoming VONA personnel.

35. SkyView initiates, coordinates, and confirms necessary services for claimants impacted by automobile accidents, and assists with their rehabilitative and post-accident living needs.

36. SkyView's work occurs via the significant training of the "*SkyView Way*" to its case managers, and includes: Communication with the claimant, family, guardians, referral sources, medical and rehabilitative providers, DME companies, transportation companies and insurance adjusters, and attorneys.

**i. *Defendant Johnson***

37. Johnson started her employment with SkyView on March 18, 2021, and became a VONA employee after the Company acquired SkyView around June 2024.

38. Johnson worked for VONA as a Regional Director of Case Management.

39. In that role, Johnson was tasked with the daily oversight, administration, and management of eight (8) case managers.

40. Further, as a Regional Director, Johnson was entrusted with access to VONA's confidential, proprietary, and trade secret information, such as business and marketing strategies; potential and existing insurers; historic practices and know-how; customer lists, data, and preferences; pricing information; and other confidential documents and information.

41. As a Regional Director of the Company and someone entrusted with trade secret information, Johnson owed fiduciary duties to VONA.

**ii. *Defendant Haskamp***

42. Haskamp began working for SkyView on August 15, 2022, and became a VONA employee after the Company acquired SkyView around June 2024.

43. Haskamp worked for VONA as an Office Administrator.

44. As the Office Administrator, Haskamp was tasked with receiving and entering referrals, records management, processing invoices, payroll, and inputting billing information into Advocate, and was given access to highly confidential and trade secret information, such as billing rate guidelines, banking information, tax forms, and VONA's QuickBooks account.

45. And, like Johnson, by virtue of her position of trust and her access to VONA's trade secrets, Haskamp owed fiduciary duties to VONA.

**iii. *Defendant Goetz***

46. Unlike Johnson and Haskamp, Goetz did not start at SkyView. Rather, VONA hired Goetz directly on July 14, 2025, as a Field Case Manager.

47. As a Field Case Manager, Goetz was responsible for managing client cases, cultivating referral relationships, and promoting VONA's services and capabilities. In that role, Goetz worked directly with employers, insurance representatives, medical providers, and served as the primary contact between the Company and its clients.

48. By virtue of this position, Goetz was entrusted with confidential and proprietary client information including client lists, client contact information, referral sources and compilations of claimant medical history.

49. As part of her hiring, Goetz signed a Confidentiality Agreement, wherein she acknowledged that, during her employment, she would be given access to some of VONA's confidential and trade secret information. (*See* Ex. C). As part of that Confidentiality Agreement,

Goetz promised to never use VONA's confidential and trade secret information outside of VONA business.

50. Specifically, Goetz agreed that VONA's confidential information included:

> [T]rade secrets, proprietary information, confidential documents and information, intensity of customers, internal business and operational information, product specifications, sales methods, pricing and loss statements, company policies and handbooks, and other information and documentation, including but not limited to information relating to Employer's pricing schemes, strategies, and methods; pay scales; operational details procedures; current customers and customer lists; and total sales and sales to particular customers, which is owned by the Employer and which is regularly used in the operation of the business of the Employer.

(*Id.* ¶ 2.1).

51. Goetz agreed that she would "not disclose any of the aforesaid Confidential Information to third parties, directly or indirectly, or use any of it outside the business of the Employer in any way that would be detrimental to the interests of the Employer, either during the term of his or her employment or at any time thereafter." (*Id.* ¶ 2.2).

52. And, as a Field Case Manager who was entrusted with direct access to VONA's confidential and trade secret information, Goetz owed fiduciary duties to VONA.

**C. Establishment of MICM & Initial Fiduciary Breaches**

53. Sometime in early 2026 (while still employed at VONA) the Individual Defendants began leveraging their positions at the Company to start a directly competitive business and steal Company clients.

54. Forensic examination of the Individual Defendants' VONA computers—undertaken soon after the Individual Defendants left VONA—has revealed the extent to which the Individual Defendants breached their fiduciary duties to VONA. (*See* Ex. A).

55. As early as March 8, 2026, Johnson began visiting *Get Your Business on Google* registration pages on her VONA computer.

56. Johnson maintained a list of to-do's for starting MICM, which she titled *MI Case Management - Start Up List* (the "MICM To-Do List"), which was also stored and updated on the Individual Defendants' VONA computers.

57. The MICM To-Do List tasked Haskamp with purchasing an online domain name for MICM.

58. Haskamp completed that task on May 5, 2026.

59. On May 11, 2026, Haskamp accessed a SkyView file called *SkyView Passwords-Admin* on her VONA computer. Afterwards, she accessed a file titled "*IRS Apply for an Employer Identification Number (EIN) online.pdf*." Haskamp later deleted and moved this file to the Recycle Bin on June 03, 2026, at 5:33pm ET.

60. An EIN Application was completed for MICM. The completed form listed Johnson as a member of MICM and listed MICM's organization date as May 11, 2026.

61. On or about May 25, 2026, Haskamp used her VONA computer to create the MICM logo.

62. On May 28, 2026, Haskamp—again, on her VONA computer—opened and accessed *MICaseManagement Logo* and created a new subfolder called *LOGO* within another folder labeled *QuickBooks - Forms Samples HInts Etc* (the "QuickBooks Folder"). The QuickBooks Folder would later be used as a repository for the Individual Defendants' commingling of VONA trade secrets and MICM documents.

63. Also on May 28, 2026, MICM's articles of organization (the "Articles") were filed with the Michigan Secretary of State. The Articles listed Johnson as MICM's agent and organizer.

64. Both the EIN Application and the Articles identify the address of MICM as 2557 Huron Trail North Muskegon, Michigan 49445: the same address that VONA has on file for Johnson's residence.

65. On June 5, 2026, MICM's Operating Procedures were signed by Johnson and Haskamp: Johnson took 51% ownership, and Haskamp took 49% ownership.

66. In or about June 2026, while employed by SkyView, Goetz met with and provided case management services to a claimant. Goetz did not input the claimant's information into VONA's systems, did not provide any documentation of the services, and did not submit the services for billing through SkyView, meaning that SkyView received no billing revenue for the services Goetz provided to the claimant.

67. Upon information and belief, Goetz provided these services on behalf of MICM while still employed by SkyView.

68. On June 30, 2026, at 9:02 am ET, a signed engagement letter retaining a tax advisory service for MICM titled "*2026_MI_Case_Management,_LLC_EL_Rachel_Johnson-signed.pdf*" was created in the Downloads folder of Haskamp's VONA laptop. Three more copies were created the same day.

**D. Trade Secret Misappropriation**

69. Throughout the spring of 2026, Johnson and Haskamp maintained the QuickBooks Folder for collecting VONA's documents and developing MICM documents based largely off of VONA's samples.

70. The documents stored in that QuickBooks Folder included:

- MICM company documents, including **MICM's Licensing and Regulatory Affairs for the State of Michigan application** filed May 28, 2026;

- The **MICM To-Do List**, which detailed notes and deadlines for creating MICM: purchasing the domain name, setting up a bank account, obtaining liability insurance, buying business cards, and creating a billing structure. Indeed, this document includes the exact timeline for when tasks were scheduled to be completed. For example, on May 5, 2026, Haskamp was to purchase a domain name on Hover for one year; on May 9, 2026, Haskamp was to buy a laptop and Microsoft business; on May 19, 2026, Haskamp and Johnson were to meet with accountants; on June 3, 2026, Haskamp or Johnson were to meet with MICM's attorney to set up the LLC Operating Agreement;
- **MICM's letterhead**;
- **MICM's tax ID and articles of incorporation**, in a subfolder of the QuickBooks Folder titled *Legal*;

71. Also included in the QuickBooks Folder were **304** of VONA and SkyView's confidential and proprietary documents. Those documents include VONA and SkyView's processes, procedures, specialized solutions, and account credentials:

| | |
|---|---|
| **"New Claimant Checklist-Admin"** | SkyView's administrative spreadsheet for tracking new claimant onboarding and intake information. The document includes each claimant's status on HIPAA, welcome letters, CM orders, claim verification, invoicing, provider letters and case management planning. It also contains claimant claim numbers and adjuster contact information. |
| **"General Case Management Guideline"** | SkyView's guidelines and procedures for its nurse care managers. This document includes VONA's confidential and proprietary procedures for gathering information, preparing for and completing an appointment, |

| | |
|---|---|
| | and documenting and reporting necessary information. |
| **How to Run a Demo Sheet** | SkyView's confidential step-by-step instructions for generating a claimant's Demographic Sheet in Advocate. |
| **Preparing for an Appt** | SkyView's confidential and proprietary appointment protocol for nurse case managers before and after provider appointments. It covers confirmations, billing, treatment plans, visit documentation and the orders and restrictions to obtain. |
| **Intro to Provider** | SkyView's proprietary form letter introducing the assigned nurse case manager to a claimant's physician and establishing care coordination under HIPAA authorization. |
| **How to Run your Daily Activities** | SkyView's confidential internal procedure for generating and submitting the pay-period Daily Activity report in Advocate. |
| **"SkyView Employee Agreement"** | SkyView's employment agreement template for its Nurse Case Managers/Administrative Assistants. |
| **How to Add a Contact or Adjuster to Advocate** | SkyView's instructions for adding a new adjuster or contact (such as a pharmacy, DME, employer, attorney or provider) in Advocate and linking it to a claimant's chart. |
| **Creating and Sending a Provider Request** | Confidential internal procedure for creating medical records requests to providers in Advocate. This document includes which Michigan and Workers Compensation request templates to use, required fields, contact-description and billing requirements. |
| **Adjuster Letter Checklist** | Confidential internal checklist for preparing, billing and sending adjuster letters with enclosed records. |
| **Advocate Reports** | The Advocate Reports contain VONA's financial information for its claimants and payers, including claimant names, claim numbers, insurers, invoice numbers, amounts |

| | |
|---|---|
| | billed and open balances. They also contain VONA’s payment receipts, write-offs and payer rate adjustments, and unbilled work in progress by case manager. That information is VONA’s confidential information; the compilation of that information is kept highly confidential and constitutes a trade secret. |
| **SkyView Passwords-Admin** | The SkyView Passwords Document contains login credentials for VONA’s business accounts, including its insurer portals, payment and communications accounts, and access instructions for each. It also contains a schedule of VONA's auto-pay accounts. That information is VONA's confidential information and is kept highly confidential |
| **SkyView Attendant Care** | The SkyView Attendant Care Form contains VONA's form for documenting attendant care services provided to injured claimants, including the categories of care, the dates of service and the hours provided. |
| **SkyView Service Order** | The SkyView Service Order contains VONA's form for obtaining physician orders for claimant services, including attendant care, replacement, transportation, case management, vocational and accessibility coordination services. |

72. But Defendants’ misappropriation of VONA and SkyView’s trade secret information did not end there. In their QuickBooks Folder, Defendants also misappropriated VONA’s highly-confidential pricing policies and billing guidelines:

| | |
|---|---|
| ***2026 SkyView Final FINAL Price Increase*** **(the “<u>SkyView Pricing Document</u>”)** | The SkyView Pricing document contains pricing information for 66 VONA payers, including their effective dates, 2025 rates, and 2026 rates. Those rates are individually negotiated with each payer and are VONA’s confidential information; the compilation of that information is kept highly confidential and constitutes a trade secret |

| | |
|---|---|
| **SkyView Billing Guidelines** | The SkyView Billing Guidelines contain VONA's billing methodology for its case managers, including the time increments and minimums billed for each activity type: on-site and telephonic case management, calls, emails, letters, records review and reports. They also contain the documentation VONA requires to support each charge. |

73. Information related to VONA's billing and pricing rates are not publicly available. VONA limits access to documents that include billing and price rate information, such as the SkyView Pricing Document, to only senior-level employees.

74. HIPAA authorization forms are essential to starting and providing case management services for a claimant. VONA developed and customized its own HIPAA authorization form (the "SkyView HIPAA Form"), which is unlike forms commonly used in the industry. Unlike the one-year term typical in the industry, the SkyView HIPAA Form remains in effect for five years. VONA invested substantial time and business recourse in developing and refining the SkyView HIPAA Form.

75. VONA has since obtained MICM's HIPAA authorization form for claimants transferring services: it is virtually identical to the SkyView HIPAA Form, with only a few words changed. MICM's form copies the SkyView HIPAA Form's five-year term, its footer and address layout, and VONA's statement: "*Specializing in Catastrophic Claims* Proficient in Michigan Auto No-Fault Claims and Michigan Worker's Compensation Claims."

76. VONA and SkyView invested substantial money, time, and effort to develop the documents described above. These documents would be highly valuable in the hands of one of VONA's competitors.

77. VONA's client and claimant relationships were built through its ongoing work cultivating referral relationships with insurance representatives, medical providers, guardians and

employers; and its operational materials reflect the accumulated know-how in case management services that VONA acquired through the SkyView acquisition.

78. The Individual Defendants collected the aforementioned documents in the QuickBooks Folder and then developed MICM documents based largely off of VONA's samples.

79. For instance, on May 31, 2026, Johnson accessed a document called *MI Case Management Rates 7.1.2026* (the "MICM Pricing Document") and saved it to the QuickBooks Folder.

80. The MICM Pricing Document was a near exact replica of the SkyView Pricing Document. Indeed, the MICM Pricing Document copies the SkyView Pricing Document's form, style, content, and even font. It also copies 44 of the VONA payers and, for 30 of those payers, the exact same VONA rates.

81. Within a minute of downloading, saving, and opening the MICM Pricing Document to her VONA computer on May 31, 2026, Johnson also opened and modified her MICM To-Do List.

82. VONA's forensic examination of the Individual Defendants' VONA computers also confirmed that the Individual Defendants accessed, printed, or emailed themselves VONA's trade secret information in their final months and days at the Company. (Ex. A).

83. On May 10, 2026, Johnson forwarded two emails from her VONA email address to her personal email address; those emails collectively contained 23 SkyView documents, including confidential step-by-step treatment instructions, HIPAA templates, payroll and fax instructions, and case management guidelines.

84. On May 13, 2026, between 8:59 and 9:10 am ET, Haskamp—while accessing a folder seemingly used to store scanned physical documents—connected two USB devices to her computer: a device identified as "SDHC Card" and one identified as "USB2.0-CRW". (Ex. A).

85. On June 27, 2026, from approximately 10:34 to 10:40 a.m. ET, Haskamp accessed the QuickBooks Folder using OneDrive. Shortly thereafter, from approximately 10:43 to 10:53 am ET, a Verbatim STORE N GO USB flash drive was connected to the same computer.

86. Upon information and belief, Haskamp used these USB devices to export scanned, confidential VONA documents off of her VONA computer for her own and MICM's benefit.

87. Haskamp did not identify or return either USB device to VONA following her resignation in July 2026.

88. On January 10, 2026, May 4, 2026, and May 16, 2026, respectively, Johnson connected three (3) USB storage devices to her VONA computer, two LogiLink "UDisk" flash drives and one Alcor Micro Corp. flash drive. (Ex. A).

89. Forensic analysis indicates that Johnson accessed or stored several VONA confidential documents or files using these USB devices. (Ex. A).

90. Upon information and belief, Johnson used these USB devices to export confidential VONA documents off of her VONA computer for her own and MICM's benefit.

91. Johnson did not identify or return either USB device to VONA following her resignation in July 2026.

92. Defendants also pilfered SkyView's drafts, templates, and forms for advocate letters, referral forms, welcome letters, and attorney-release letters.

93. On May 21, 2026, Haskamp used VONA's business Amazon account to order 1,500 sheets of copier paper, a six-pack of three-ring binders, and two black Brother printer toner

cartridges, all shipped directly to Johnson's home. VONA paid Johnson $75 a month for a tech stipend for office and technology needs. Johnson's position required little to no printing, and VONA had never ordered or shipped similar supplies to Johnson or any other Regional Director or team member.

94. Upon information and belief, Johnson used the printing supplies she had received from VONA in order to print physical copies of VONA's confidential information, for her own and MICM's benefit.

95. On June 10, 2026, Johnson forwarded SkyView's Billing Guidelines, SkyView Attendant Care Instructions, and template letters to physicians from her VONA computer to her personal email.

96. Then, on June 18, 2026, Johnson forwarded herself a client case letter that included diagnosis codes and fees, again from her VONA computer to her personal email.

97. On June 23, 2026, in the middle of the workday, Johnson forwarded herself two highly confidential SkyView template letters that can be used for correspondence with adjusters and insurers—an important part of the business and that had been created at great business expense.

98. Each of the documents described above were created and assembled by VONA as a result of a great deal of business time, efforts, and expense.

**E. Coordinated Resignations, Attempted Cover-Up, and Continued Misuse of VONA's Information**

99. After dedicating VONA time and resources to launching MICM throughout the spring of 2026, the Individual Defendants all resigned within days of each other: Johnson on July 2, 2026, Goetz on July 3, 2026, and Haskamp on July 9, 2026. Their coordinated resignations occurred nearly two months after MICM was organized, and more than a month after the MICM Articles were filed.

100. On July 2, 2026, just one day before her resignation, Goetz permanently deleted two folders on her VONA computer named "*Rachel Tasks*" and "*Personal*."

101. On July 3, 2026—fewer than one week before her own resignation—Haskamp deleted the entire QuickBooks Folder that she had maintained on her VONA computer to comingle VONA trade secret information and the new MICM documents, which had been created using VONA samples or templates.

102. On July 3, 2026, prior to Goetz's resignation from VONA, Goetz and Johnson contacted a VONA claimant to encourage that claimant to move their business to MICM.

103. Within days of the Individual Defendants' resignations, 54 claimants demanded that their business be transitioned to MICM. 2 used the same MICM HIPAA authorization form—which was a near-exact replica of the SkyView HIPAA Form—to request release of their medical files to MICM. All but three (3) Goetz's current list of claimants transferred to MICM and all but two (2) of Johnson's transferred to MICM.

104. Upon information and belief, the MICM HIPAA authorization form had been provided by Defendants to facilitate their transfer to MICM.

105. Upon information and belief, the Defendants used contact information for claimants (i.e. phone numbers, emails, and addresses) that they had stolen from VONA to contact these claimants.

106. On October 16, 2026, VONA mistakenly received an invoice from an insurer for services for a claimant who had transferred over to MICM. The billing rate is identical to the rate in the SkyView Pricing Document for that insurer.

107. Upon information and belief, the Individual Defendants exported the QuickBooks Folder, or the information contained therein, from their VONA devices to their personal devices for their own or VONA's benefit.

108. Upon information and belief, Defendants continue to leverage the VONA trade secrets that they gathered, sent to themselves, and copied in order to build MICM's business.

109. Indeed, by using VONA's trade secrets, Defendants have been able to jumpstart MICM without having to invest the time and resources necessary to develop such information through fair competition in the market.

110. And, the clients that Defendants have secured with their headstart advantage were stolen from a single competitor: their old employer, VONA.

111. VONA's claimants—who entrust VONA with their own confidential and medical information—may lose trust and confidence in VONA if that information is distributed without authorization.

**F. VONA's Attempt to Halt the Continued Misappropriation of Trade Secrets**

112. On July 17, 2026, VONA sent Cease and Desist letters to Johnson, Haskamp, and Goetz, demanding that they return any VONA information that they retained after leaving VONA. (Ex. D).

113. None complied.

114. On September 18, 2026, VONA asked Defendants to agree to a targeted forensic protocol, whereby a neutral third party would conduct a search of their devices to locate and identify the confidential information and trade secrets that they had stolen from VONA.

115. Defendants refused to agree to VONA's reasonable forensic examination protocol.

## CAUSES OF ACTION

**COUNT I**
**Misappropriation of Trade Secrets under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.***
**(Against all Johnson, Haskamp, and MICM)**

116. VONA incorporates and re-alleges the previous paragraphs as if fully set forth herein.

117. Johnson, Haskamp, and MICM misappropriated VONA's trade secrets by, among other things:

- Comingling highly confidential VONA documents in the QuickBooks Folder into MICM replicas.
- Copying the information from the SkyView Pricing Document into the MICM Pricing Document and then, as agents of MICM, using that information for MICM's benefit.
- Johnson forwarding to her personal email address SkyView billing guidelines, attendant care instructions, and billing directions, which upon information and belief, MICM, Johnson, and Haskamp have continued to retain and use for their own benefit.
- Johnson and Haskamp taking VONA's client lists and then, as agents of MICM, using that information to successfully solicit VONA's clients.
- Johnson printing physical copies of VONA's confidential information for her own and MICM's benefit.

118. VONA, through its acquisition of SkyView, owns the above trade secrets and relies on them in performing its business. VONA conducts business across the country, and its trade secrets are used in connection with interstate commerce.

119. Those trade secrets were developed by SkyView and VONA through a substantial investment of money, time, and energy, and they derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, others who would obtain economic value from their disclosure.

120. VONA has taken reasonable measures to protect the confidentiality of its trade secrets. As described above, VONA limits access to its trade secret information, requires its employees to abide by its Handbook's confidentiality policies, password-protects its internal case management software, and encrypts employees' laptops and work devices.

121. VONA did not consent to the manner in which Defendants used, copied, and transferred its trade secrets, as described herein.

122. VONA disclosed its trade secrets to Johnson and Haskamp in confidence, while they were employees of the Company and subject to fiduciary duties to maintain the confidentiality of that information.

123. Johnson and Haskamp breached that confidence by improperly using VONA's trade secrets to develop pricing and billing strategies at MICM and create MICM client lists. Johnson and Haskamp further breached that confidence by failing to return VONA's trade secrets at VONA's demand.

124. By virtue of their positions at VONA, both Johnson and Haskamp knew that the VONA documents they sent to themselves or utilized were highly valuable trade secrets.

125. And, both Johnson and Haskamp knew of their duties to refrain from disclosing or using VONA's trade secrets.

126. For its part, MICM knew that the documents being used to develop its business strategies and client lists were confidential VONA trade secrets because its owners were Johnson

and Haskamp, and its employees were Johnson, Haskamp, and Goetz—people who themselves knew that the documents MICM was relying upon were VONA trade secrets.

127. VONA has suffered harm as a direct and proximate result of Johnson's, Haskamp's, and MICM's trade secret misappropriation and will continue to suffer irreparable harm if they are not permanently enjoined from retaining, using, or disclosing VONA's trade secrets.

128. VONA seeks an award of actual damages in an amount to be proven at trial under 18 U.S.C. § 1836(b)(3)(B).

129. Further, because Johnson's, Haskamp's, and MICM's misappropriation of VONA's trade secrets was conducted through improper means and was willful and malicious, VONA seeks attorneys' fees and exemplary damages under 18 U.S.C. § 1836(b)(3)(C)–(D).

## COUNT II
## Misappropriation of Trade Secrets under the Michigan Uniform Trade Secrets Act, Mich. Comp. Laws § 445.1901 *et seq.*
## (Against Johnson, Haskamp and MICM)

130. VONA incorporates and re-alleges the previous paragraphs as if fully set forth herein.

131. Johnson, Haskamp, and MICM misappropriated VONA's trade secrets by, among other things:

- Comingling highly confidential VONA documents in the QuickBooks Folder into MICM replicas.
- Copying the information from the SkyView Pricing Document into the MICM Pricing Document and then, as agents of MICM, using that information for MICM's benefit.
- Johnson forwarding to her personal email address SkyView billing guidelines, attendant care instructions, and billing directions, which upon information and

belief, MICM, Johnson, and Haskamp have continued to retain and use for their own benefit.

- Johnson and Haskamp taking VONA's client lists and then, as agents of MICM, using that information to successfully solicit VONA's clients.
- Johnson printing physical copies of VONA's confidential information for her own and MICM's benefit.

132. VONA, through its acquisition of SkyView, owns the above trade secrets and relies on them in performing its business.

133. Those trade secrets were developed by SkyView and VONA through a substantial investment of money, time, and energy, and they derive independent economic value from not being generally known to, and not being readily ascertainable through proper means by, others who would obtain economic value from their disclosure.

134. VONA has taken reasonable measures to protect the confidentiality of its trade secrets. As described above, VONA limits access to its trade secret information, requires its employees to abide by its Handbook's confidentiality policies, password-protects its internal case management software, and encrypts employees' laptops and work devices.

135. VONA did not consent to the manner in which Defendants used, copied, and transferred its trade secrets, as described herein.

136. VONA disclosed its trade secrets to Johnson and Haskamp in confidence, while they were employees of the Company and subject to fiduciary duties to maintain the confidentiality of that information.

137. Johnson and Haskamp breached that confidence by improperly using VONA's trade secrets to develop pricing and billing strategies at MICM and create MICM client lists.

Johnson and Haskamp further breached that confidence by failing to return VONA's trade secrets at VONA's demand.

138. By virtue of their positions at VONA, both Johnson and Haskamp knew that the VONA documents they sent to themselves or utilized were highly valuable trade secrets.

139. And, both Johnson and Haskamp knew of their duties to refrain from disclosing or using VONA's trade secrets.

140. For its part, MICM knew that the documents being used to develop its business strategies and client lists were confidential VONA trade secrets because its owners were Johnson and Haskamp, and its employees were Johnson, Haskamp, and Goetz—people who themselves knew that the documents MICM was relying upon were VONA trade secrets.

141. VONA has suffered harm as a direct and proximate result of Johnson's, Haskamp's, and MICM's trade secret misappropriation and will continue to suffer irreparable harm if they are not permanently enjoined from retaining, using, or disclosing VONA's trade secrets.

142. VONA seeks an award of actual damages in an amount to be proven at trial under Mich. Comp. Laws Ann. § 445.1904.

143. Further, because Johnson's, Haskamp's, and MICM's misappropriation of VONA's trade secrets was conducted through improper means and was willful and malicious, VONA seeks attorneys' fees under Mich. Comp. Laws Ann. § 445.1905.

## COUNT III
## Breach of Fiduciary Duties under Michigan Law
## (Against Johnson, Haskamp, and Goetz)

144. VONA incorporates and re-alleges the previous paragraphs as if fully set forth herein.

145. Under Michigan law, a fiduciary relationship arises from the reposing of faith, confidence, and trust and the reliance of one on the judgment and advice of another. When such a relationship exists, the fiduciary—that is, the one who is entrusted to advise the other—has a duty to act for the benefit of the principal regarding matters within the scope of the relationship.

146. As (i) the Regional Director for VONA and (ii) someone to whom VONA entrusted access to highly confidential and trade secret information, Johnson owed VONA fiduciary duties.

147. As (i) the Office Administrator for VONA and (ii) someone to whom VONA entrusted access to highly confidential and trade secret information, Haskamp owed VONA fiduciary duties.

148. As (i) a Field Case Manager for VONA, and (ii) someone to whom VONA entrusted access to VONA's clients and confidential client information, Goetz owed VONA fiduciary duties.

149. Each of the Individual Defendants' fiduciary duties included (but were not limited to): (i) the duty to guard and not misuse confidential and proprietary information of VONA; (ii) to devote best efforts to the business of VONA; (iii) to not operate a related business while employed by VONA; and (iv) to not interfere with or usurp business opportunities belonging to VONA.

150. The Individual Defendants breached their fiduciary duties to VONA by—among other things, and while still employed at VONA—assisting with the setup of a directly competitive company to VONA (MICM), performing work for MICM, misusing VONA's confidential information, diverting VONA clients to MICM, and failing to use their best efforts to fulfill their obligations to VONA.

151. The Individual Defendants' breach of their fiduciary duties is a direct and proximate cause of damages to VONA, including payments made by VONA to Johnson, Haskamp,

and Goetz while they were covertly working for a directly competitive company, and the attorneys' fees and costs incurred to uncover the extent of the Individual Defendants' fiduciary breaches.

**COUNT IV**
**Tortious Interference with Business Relationships**
**(Against All Defendants)**

152. VONA incorporates and re-alleges the previous paragraphs as if fully set forth herein.

153. Under Michigan law, the elements of tortious interference with a business relationship or expectancy are: (1) the existence of a valid business relationship or expectancy, which is not necessarily predicated on an enforceable contract; (2) the defendant's knowledge of that relationship or expectancy; (3) intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy; and (4) resulting damage to the party whose relationship or expectancy was disrupted. Health Call of Detroit v. Atrium Home & Health Care Services, Inc., 706 N.W.2d 843, 849 (Mich. App., 2005); Mino v. Clio Sch. Dist., 255 Mich. App. 60, 78 (2003).

154. VONA has business relationships with numerous clients out of its western Michigan location, as evidenced by the confidential pricing lists accessed and/or kept by Johnson and Haskamp and subsequently utilized by MICM.

155. The Individual Defendants knew about those VONA business relationships by virtue of their positions of trust at VONA (Regional Director, Office Administrator, and Field Case Manager).

156. MICM knew about those VONA business relationships through its employees and owners—that is, the Individual Defendants.

157. The Individual Defendants intentionally and unjustifiably interfered with VONA's relationships with its western Michigan clients by diverting VONA's business to MICM while still employed at VONA, in violation of their fiduciary duties to VONA.

158. MICM intentionally and unjustifiably interfered with VONA's relationships through the Individual Defendants—MICM's agents—who diverted VONA's business to MICM in breach of their fiduciary duties to VONA. MICM knew that the Individual Defendants were acting in breach of their fiduciary duties owed to VONA.

159. Defendants' tortious interference with VONA's business relationships is a direct and proximate cause of damages to VONA, including but not limited to, lost business from clients and disruption to business operations.

**COUNT V**
**Unfair Competition with Business Relationships**
**(Against All Defendants)**

160. VONA incorporates and re-alleges the previous paragraphs as if fully set forth herein.

161. Michigan law prohibits unfair and unethical trade practices that are harmful to competitors or the public. Dana Ltd. v. Am. Axle & Mfg. Holdings, Inc., No. 1:10-CV-450, 2011 WL 4954061, at *3–4 (W.D. Mich. Oct. 17, 2011).

162. At all relevant times, Johnson served as Regional Director for VONA, a position that carried significant managerial authority and access to VONA's business operations; Haskamp served as Office Administrator for VONA, a position that afforded her access to VONA's internal business records and operations; and Goetz served as a Field Case Manager for VONA, a position that afforded her access to VONA' clients and their private information.

163. By virtue of their respective positions, the Individual Defendants had access to and became familiar with VONA's confidential information, including but not limited to VONA's customer lists, pricing data, sales methods, solicitation lists, operational procedures, and other confidential business information owned by VONA and regularly used in the operation of its business.

164. During their employment, Johnson and Haskamp engaged in unfair competition practices by, among other things: (i) forming MICM, a direct competitor of VONA, and performing work on behalf of MICM while still employed by VONA; (ii) soliciting VONA's clients using confidential client lists and pricing data obtained during the course of their employment; (iii) failing to return VONA's records, documents and similar items relating to VONA's business; and (iv) diverting VONA customers to a directly competitive enterprise, MICM, using the customer information collected and maintained by VONA. Because Johnson and Haskamp are owners and employees of MICM, they benefited from this misconduct.

165. During her employment, Goetz engaged in unfair competitive practices by diverting VONA customers to a directly competitive enterprise, MICM, using the customer information collected and maintained by VONA. Because Goetz ultimately became an MICM employee, she benefited from this diversion.

166. MICM engaged in unfair competitive practices by, among other things, relying on the Individual Defendants' wrongful conduct described herein to its benefit as a direct competitor of VONA.

167. Defendants' unfair competitive conduct is a direct and proximate cause of unjust enrichment of Defendants and damages to VONA, including but not limited to, lost business.

**COUNT VI**
**Breach of Contract**
**(Against Goetz)**

168. VONA incorporates and re-alleges the previous paragraphs as if fully set forth herein.

169. The Confidentiality Agreement between VONA and Goetz was a valid, enforceable contract, whereby VONA agreed to continue employing Goetz, and Goetz agreed to not disclose or use VONA's confidential information outside of the business of VONA.

170. In Section 1.1 of the Confidentiality Agreement, Goetz agreed that her "continued employment with [VONA] [was] good and valuable consideration" for the agreement.

171. In Section 2.2 of the Confidentiality Agreement, Goetz agreed that she would not "disclose any [of VONA's Confidential Information] to third parties, directly or indirectly, or use any of it outside the business of [VONA] in any way that would be detrimental to the interests of [VONA], either during the term of his or her employment or at any time thereafter."

172. Goetz breached that contractual obligation by utilizing VONA's confidential information to divert customers from VONA to MICM, which was done for MICM's benefit and VONA's detriment.

173. For example, Goetz used the identity and contact information of a VONA claimant to encourage that claimant to move their business to MICM.

174. Goetz has continued to breach that contractual obligation by utilizing the VONA confidential information taken by Johnson and Haskamp for the benefit of MICM.

175. Goetz's breach has caused VONA damages, including but not limited to lost profits and costs created from business disruption.

**COUNT VII**
**Conversion**
**(Against Johnson, Haskamp, and MICM)**

176. VONA incorporates and re-alleges the previous paragraphs as if fully set forth herein.

177. Conversion arises from "any distinct act of domain wrongfully exerted over another's personal property in denial of or inconsistent with the rights therein." Am. Furukawa, Inc. v. Hossain, 103 F. Supp. 3d 864, 885 (E.D. Mich. 2015).

178. During their employment with VONA, Johnson and Haskamp had access to VONA's property, including various computer files and the confidential information described herein.

179. Johnson and Haskamp wrongfully took possession of such property, without authorization from VONA, and Johnson, Haskamp, and MICM converted such property to their own use.

180. Upon learning that Johnson and Haskamp had improperly taken VONA's files and data, VONA sent Cease and Desist Letters specifically requesting the return of VONA's confidential data. The Defendants refused to do so.

181. VONA has suffered harm as a direct and proximate result of Johnson's, Haskamp's, and MICM's conversion of its confidential information and will continue to suffer irreparable harm if they are not permanently enjoined from retaining, using, or disclosing VONA's information.

## PRAYER FOR RELIEF

WHEREFORE, VONA prays for the following relief:

A. Judgment in favor of VONA against Defendants for Counts I–VII and an award of damages in an amount to be determined at trial;

B. A temporary restraining order and preliminary and permanent injunctive relief enjoining Defendants from retaining, using, or disclosing any of VONA's trade secrets and confidential information;

C. An order that Defendants immediately return to VONA all originals and copies of all documents containing or relating to VONA's trade secrets, confidential and proprietary information, and ordering Defendants to submit to a neutral forensic examination protocol to ensure that all such information has been accounted for;

D. An order permitting limited expedited discovery in advance of the anticipated preliminary injunction hearing;

E. An award of attorneys' fees, costs, and expenses incurred as a result of this action;

F. A trial by jury as to all issues properly tried to a jury; and,

G. Such further and other legal and equitable relief as this Court may deem just and necessary under the circumstances.

Dated: November 2, 2026

Respectfully submitted,

By: /s/Cara M. Swindlehurst

Cara M. Swindlehurst
**GORDON REES SCULLY MANSUKHANI LLP**
37000 Woodward Avenue, Suite 225
Bloomfield Hills, MI 48304
Telephone: +1 989 621 4454
cswindlehurst@grsm.com

Brian Mead (*pro hac vice forthcoming*)
**MCDERMOTT WILL & SCHULTE LLP**
444 West Lake Street, Suite 4000
Chicago, Illinois 60606-0029
Telephone: +1 312 372 2000
Fax: +1 312 984 7700
bmead@mcdermottlaw.com

Nicholas Meyer (*pro hac vice forthcoming*)
Emily Rentschler Julve (*pro hac vice forthcoming*)
**MCDERMOTT WILL & SCHULTE LLP**
One Vanderbilt Avenue
New York, New York 10017
Telephone: +1 929 5668358
Fax: +1 312 984 7700
nmeyer@mcdermottlaw.com
ejulve@mcdermottlaw.com

*Attorneys for Plaintiff VONA Case Management LLC.*

**VERIFICATION**

I, Jordan Wheeler, as Chief Operations Officer at Axiom Medical/VONA Case Management, hereby declare under penalty of perjury that I have read the foregoing Verified Complaint, and that I know the allegations set forth therein to be true, except those made on information and belief, as to which I believe them to be true to the best of my knowledge, information and belief.

Dated: November 2, 2026

Respectfully submitted,

By: *Jordan Wheeler*

I. Jordan Wheeler